## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 03 2016, 5:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

April L. Sellers
Butler & Sellers, P.C.
Elkhart, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremy D. Brooks, <br> *Appellant-Defendant,* <br><br> v. <br><br> Katherene Gardner, <br> *Appellee-Plaintiff.* | June 3, 2016 <br><br> Court of Appeals Case No. <br> 20A03-1512-DR-2192 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Stephen R. Bowers, Judge; <br> The Honorable George Biddlecome, Special Judge <br><br> Trial Court Cause No. <br> 20D02-0502-DR-88 |

**May, Judge.**

[1] Jeremy D. Brooks appeals the trial court's determination he must report to work release for non-compliance with a contempt order. As Brooks complied with the order, we reverse.

## Facts and Procedural History

[2] Pursuant to divorce proceedings, Brooks and Katherene Gardner (then known as Katherene Brooks) entered into a Property Settlement Agreement wherein they stipulated Brooks would "pay . . . all [Gardner's] student loan obligation in excess of eighty-five hundred ($8,500) dollars[.]" (App. at 31.) Several years later, following mediation, the parties agreed Brooks was to make "reasonable payments on the student loan to keep loan out of default and or [sic] in a matter [sic] that is acceptable to the creditor." (*Id.* at 39.)

[3] On May 8, 2015, Gardner filed a Motion for Contempt alleging Brooks had not complied with that agreement. In an order dated June 8, 2015 ("June 8 Order"), Judge Stephen R. Bowers found Brooks in contempt, stating:

> The Court finds the Husband in contempt of court for failure to pay the student loan as set out in the Decree; which was further confirmed in mediation. The Court finds the Husband completely failed to follow the Court's order regarding the student loan. The Court commits the Husband to the Elkhart County Community Corrections Program on Work Release. The Court defers the imposition of said commitment and orders the Husband to report for the execution of the commitment on December 11, 2015 by close of business. The Court sets the matter for status conference December 7, 2015 at 1:30 PM. If Husband provides verification the obligation has been paid in full *or satisfactory arrangements have been made with the lender* for

payment of the obligation, the Court will further defer the imposition of the commitment.

(*Id.* at 43) (emphasis added).

[4] On June 23, 2015, Brooks and Gardner entered into a Rehabilitation Agreement ("Agreement") with the owner of the loan, Texas Guaranteed Student Loan Corporation ("TG"). As part of this Agreement, Brooks and Gardner agreed to "make at least nine (9) timely monthly payments (during a ten (10) consecutive month period) in the amount of $5.00[.]" (*Id.* at 47.) The Agreement did not permit lump sum payments against future installments.

[5] At the December 7 status hearing, with Special Judge George Biddlecome presiding, Brooks supplied proof of the Agreement, TG's acceptance of same, and proof of timely payments to date. Gardner objected to the terms of the repayment as the Agreement did not remove her name from the loan. Gardner then began testifying as to the amount of the loan and interest and to its effect on her life. Brooks, through counsel, objected to such testimony as being evidentiary and requiring a hearing beyond the scope of the status hearing. Special Judge Biddlecome agreed Gardner's additional testimony was beyond the scope of the hearing, found Brooks was not in compliance with the June 8 Order, and ordered him to report to work release the following Friday.[1]

---

[1] On December 11, 2015, Brooks filed an Emergency Motion to Reconsider. The trial court did not rule on the motion. We therefore review the decision made by Special Judge Biddlecome on December 7.

# Discussion and Decision

[6] Gardner did not submit an appellee's brief. In such a situation, we do not undertake the burden of developing arguments for the appellee. Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish *prima facie* error. *Fisher v. Bd. of Sch. Tr.*, 514 N.E.2d 626, 628 (Ind. Ct. App. 1986). *Prima facie*, in this context, is defined as "at first sight, on first appearance, or on the face of it." *Johnson Cnty. Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind. Ct. App. 1985). Where an appellant is unable to meet that burden, we will affirm. *Blair v. Emmert*, 495 N.E.2d 769, 771 (Ind. Ct. App. 1986), *reh'g denied, trans. denied*.

[7] We review a contempt sentence for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Mitchell v. Mitchell,* 785 N.E.2d 1194, 1198 (Ind. Ct. App. 2003). When we review a ruling on a petition for contempt, we do not reweigh evidence or judge the credibility of witnesses. *Id.*

[8] Contempt of court "involves disobedience of a court which undermines the court's authority, justice, and dignity." *Srivastava v. Indianapolis Hebrew Congregation, Inc.,* 779 N.E.2d 52, 60 (Ind. Ct. App. 2002), *trans. denied.* "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." *Francies v. Francies,* 759 N.E.2d 1106, 1118 (Ind. Ct. App. 2001), *reh'g denied, trans. denied.*

[9]     The purpose of civil contempt proceedings is to "coerce action for the benefit of the aggrieved party." *Marks v. Tolliver*, 839 N.E.2d 703, 707 (Ind. Ct. App. 2005). "[A] contempt order which neither coerces compliance with a court order or [sic] compensates the aggrieved party for loss, and does not offer an opportunity for the recalcitrant party to purge himself, may not be imposed in a civil contempt proceeding." *Flash v. Holtsclaw*, 789 N.E.2d 955, 959 (Ind. Ct. App. 2003), *reh'g denied, trans. denied*.

> In order to be held in contempt for failing to comply with a court order, a party must have willfully disobeyed the order. The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. A party may not be held in contempt for failing to comply with an ambiguous or indefinite order.

*Bandini v. Bandini,* 935 N.E.2d 253, 264-65 (Ind. Ct. App. 2010) (citations and quotation marks omitted).

[10]    Here, the trial court abused its discretion when it ordered Brooks to report to work release, because Brooks complied with the requirements of the June 8 Order. Special Judge Biddlecome stated "I – I'm not satisfied with [the arrangements] . . . and as far as I'm concerned Judge Bowers' Order stands.

You go to jail on Friday.[2] . . . [I]f this doesn't get this woman's name of [sic] that loan, he's not satisfactory." (Tr. at 9-10) (footnote added).

[11] Brooks has made a *prima facie* showing that finding was improper. The June 8 Order deferred Brooks' commitment to work release if he "provides verification the obligation has been paid in full or *satisfactory arrangements have been made with the lender for payment* of the obligation[.]" (*Id.* at 43) (emphasis added). At the December 7 hearing, Brooks submitted evidence of the Agreement, a letter from TG indicating it accepted the Agreement, and proof he made the agreed-on payments for the five intervening months. As Brooks complied with the June 8 Order,[3] we reverse the order that Brooks report to work release. *Cf. Mitchell v. Mitchell*, 871 N.E.2d 390, 395-96 (Ind. Ct. App. 2007) (contempt proper to enforce compliance with court order to hold wife harmless on debt).

## Conclusion

[12] The trial court abused its discretion when it ordered Brooks to report to work release, as Brooks complied with the June 8 Order. Accordingly, we reverse.

---

[2] We note the commitment was "to the Elkhart County Community Corrections Program *on Work Release*[]," and not to "jail" as stated by Special Judge Biddlecome. (App. at 43.)

[3] Special Judge Biddlecome indicated he would not be satisfied until Brooks removed Gardner's name from the loan. The June 8 Order required Brooks to "provide[] verification the obligation has been paid in full *or* satisfactory arrangements have been made with the lender for payment of the obligation." (App. at 43) (emphasis added). It did not require him to remove Gardner's name from the loan and, as such, the court could not rely on that reasoning as a justification for finding he failed to comply with the June 8 order. *See, e.g., Bandini,* 935 N.E.2d 253, 264-65 (party cannot be held in contempt for failing to obey "an ambiguous or indefinite order").

[13]     Reversed.

Baker, J., and Brown, J., concur.