## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 22 2017, 5:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Heidi J. Cintron
Center for Legal Justice
Elkhart, Indiana

ATTORNEY FOR APPELLEE

Robert J. Palmer
May • Oberfell • Lorber
Mishawaka, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lisa Baushke,<br>*Appellant-Respondent,*<br><br>v.<br><br>Eric Miller,<br>*Appellee-Petitioner.* | February 22, 2017<br><br>Court of Appeals Case No.<br>20A04-1606-JP-1225<br><br>Appeal from the Elkhart Superior Court<br><br>The Hon. Stephen R. Bowers, Judge<br><br>Trial Court Cause No.<br>20D02-1305-JP-233 |

**Bradford, Judge.**

# Case Summary

Appellant-Respondent Lisa Baushke ("Mother") and Appellee-Petitioner Eric Miller ("Father") are the parents of D.M., who was born on April 5, 2012. At the time of D.M.'s birth, Mother and Father were in a relationship and living together. On June 17, 2013, Mother and Father entered into a joint stipulation awarding the parties joint legal and physical custody of D.M. Sometime in 2015, the relationship deteriorated, and Mother moved out of their shared home, taking D.M. with her. Mother and Father both sought custody of D.M. On March 30, 2015, the trial court appointed a Guardian Ad Litem ("GAL").

The trial court conducted an evidentiary hearing on January 5, 2016 and January 13, 2016. On May 3, 2016, the trial court issued an order awarding Father sole legal and physical custody of D.M., subject to Mother's right to parenting time. The trial court also ordered that D.M. receive counseling. The trial court, however, did not address child support at that time and asked that the parties exchange information necessary to calculate child support. On appeal, Mother[1] raises the following restated issues: whether there is evidence to support the trial court's order modifying custody; and whether the trial court should have set two effective dates for the child support obligation, from January 21, 2015 to May 20, 2016 and May 20, 2016 going forward. Father also raises the following issue on appeal: whether the case should be remanded

[1] Mother did not submit an appendix with her appellate brief.

to the trial court to consider an award of appellate attorney's fees in favor of Father. Because there was sufficient evidence to support the trial court's findings regarding the custody modification, we affirm the trial court's order. We will not rule on the issue regarding child support as we lack jurisdiction over that particular issue. Additionally, we decline to remand the case back for a determination regarding Father's fees because the facts of this case do not rise to the level to merit the award of appellate attorney's fees.

# Facts and Procedural History

[3] The trial court's order instructs us to the underlying facts and procedural history leading to this appeal:

> [Mother] gave birth to D.M. on April 5, 2012. [Father] filed a Petition [t]o Establish Paternity on May 24, 2013. On June 17, 2013, the parties submitted a joint stipulation awarding the parties joint legal custody over their son, D.M., with no designation of primary physical custody. At the time the stipulation was entered into, the parties resided together. By early 2015, the relationship between the parties had deteriorated leading to their separation. Both sought custody of D.M. The court on March 30, 2015, appointed attorney Pauline Micholas as Guardian Ad Litem. The conflict between the parties has been unabated since that time. There have been multiple contempt filings and requests to modify the parenting time arrangement.

> ****

> There is no evidence in this case that the child has been cared for by a *de facto* custodian. D.M. is a four-year old boy, who loves

both of his parents, and who appears to enjoy a generally positive relationship with both. The wishes of the parents offer no meaningful guidance to the Court in deciding this case. Each parent wants full custody of D.M. Each parent would prefer that the other parent was not in the picture. . . .

When the parties appeared for a hearing on August 31, 2015, they advised the Court that they had reached a stipulation addressing Father's pending motions. Unfortunately, Mother was unwilling to sign the written stipulation when it was prepared. The conflict between the parties continued accompanied by the filing of additional contempt pleadings, a request for a psychological evaluation of Mother, and disputes over where the child would attend preschool.

The Court conducted an extensive evidentiary hearing on January 5, 2016, and January 13, 2016. Following the evidentiary hearing, the Court was asked to address the lack of cooperation between the parties. In response the court ordered the parties to engage in a high conflict parenting class, and to engage the child in therapy. . . .

Appellee's App. Vol. II, pp. 18-19.

[4]     On May 3, 2016, the court issued the following order which provides, in part, as follows:

After considering the evidence and the arguments made by the parties in light of the history of this case, the Court finds that joint legal custody is inappropriate. The Court further finds [that it] is in the best interest of the child to be placed in the care and custody of his Father, subject to Mother's right to parenting time as set out in this Order. The Court grants Mother parenting time alternate weekends from 6:00 PM on Friday until 6:00 PM on Sunday. Mother is also awarded one (1) overnight of parenting time each week. Mother is responsible for taking the child to his

regular preschool during her midweek parenting time periods. The Court directs that holidays and other special times with the child be divided as provided in the Indiana Parenting Time Guidelines. Both parties are ordered to comply with the provisions of the Parenting Time Guidelines calling for additional parenting opportunities to be offered to the noncustodial parent. The parties are encouraged to make adjustments to the parenting schedule to reasonably accommodate the respective schedules of the parties. Any such adjustment[s] are to be made in advance, in writing, and, except in cases of emergencies, a reasonable time before the scheduled parenting time. Although other may be used to provide transportation of D.M. in order to change custody of the child, communication should be directly between the parties. The stepmother's direct contact with Mother should be limited.

Appellee's App. Vol. II, pp. 20-21.

[5] On appeal, Mother raises the following restated issues: whether the trial court abused its discretion when it modified custody of the minor child, D.M. and whether the trial court should have set two effective dates for the child support obligation. Father also raises the issue of whether the case should be remanded to the trial court to consider an award of appellate attorney's fees in his favor.

# Discussion and Decision[2]

## I.  Standard of Review

"When reviewing judgments with findings of fact and conclusions of law, Indiana's appellate courts 'shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" *Best v. Best,* 941 N.E.2d 499, 502 (Ind. 2011) (quoting Ind. Trial Rule 52(A)).  "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Id.*  Findings are not considered clearly erroneous unless "the record contains no facts to support them either directly or by inference." *Id.*

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time.  Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Id.*

---

[2] Mother raises another issue on appeal: whether the trial court erred in calculating the number of parenting time days that Father lost.  There is evidence to support the trial court's determination that Mother interfered with approximately 82 days of Father's parenting time.  Moreover, even if the court's determination was not accurate, the outcome of the case would not have changed as there is ample evidence to support the trial court's decision to award Father sole legal and physical custody.

## II. Whether the Trial Court Erred in Granting Father Sole Legal and Primary Custody

[7] Mother challenges the trial court's modification of legal and physical custody on the ground that there was no evidence to support that such decision was in the best interest of the child. Specifically, Mother argues that the trial court disregarded the evidence that she presented regarding her ability to parent her child, the GAL's report did not reflect the totality of the circumstances and should have been disregarded by the court, the trial court improperly found that Father was emotionally stable, and the trial court improperly considered the fact that Father entered into a mentor-mentee relationship to help him become a better father and person. In support of her assertions, Mother points to various items of evidence that she believes favor her position and disfavor that of Father. Based upon the content of her arguments, Mother is not arguing that there is no evidence to support the trial court's decision, but rather she is asserting that the trial court improperly weighed and evaluated the evidence.

[8] "[O]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). "We cannot weigh the evidence but must consider it in a light most favorable to the judgment." *Best*, 941 N.E.2d at 503. Moreover, "[a]n appellate court may not substitute its own judgment for that of the trial court if any evidence or legitimate inferences support the trial court's judgment." *Id*.

The court made extensive findings in its order supporting its decision to award

Father with sole legal and physical custody of D.M.:

Mother has been diagnosed with anxiety and depression. . . . The court finds that on at least one occasion, Mother called the paternal grandmother and expressed "I am going to hurt myself [or] my children." When grandmother arrived at the [Mother's] home a short time later, [Mother] left in her car, returning hours later. When [Mother] returned to her home she remained distant and unengaged with [D.M.]. In short, the Mother has evidence of a mental instability that makes her a potential threat to the welfare of the child.

In addition to her mental health issues, Mother has demonstrated poor judgment at a number of levels. Her insistence on changing the child's preschool even though the change resulted in unnecessarily interfering with the child's sleep is just one example. It is clear to the Court that the decision to enroll the child in a daycare where Mother was working on a part-time basis was motivated by Mother's [self-interest] rather [than] the best interests of the child. Mother's action unnecessarily interfered with the child's normal routine. Mother compounded the problem by making negative comments to the child about the original preschool. More deeply concerning is the fact that Mother suggested that he should not "use the potty", not only causing embarrassment to the child but jeopardizing his ability to stay at the original preschool. . . .

****

Notwithstanding the dismal state of the relationship between the parties, both parties enjoy a good relationship with their son. The evidence presents a picture of two parents who loathe one another, but adore their son. The evidence also is overwhelming that the child loves his parents and wants to spend time with both of them. The child also enjoys positive relationship[s] with members of the extended family of each parent. Father has remarried, and the child has a strong positive relationship with his stepmother. The fact that the child is socially well-adjusted is

further supported by the positive reports from the child's preschool.

After considering the evidence and the arguments made by the parties in light of the history of this case, the Court finds that joint legal custody is inappropriate. The Court further finds [that it] is in the best interest of the child to be placed in the care and custody of his Father, subject to Mother's right to parenting time as set out in this Order. . . .

Appellee's App. Vol. II, pp. 19-20.

[9] The trial court made these findings, in part, after considering the GAL's report. In the report, the GAL reported hearing from multiple sources that Mother and Father are incapable of parenting D.M. together without extreme conflict and drama. Several of the witnesses that the GAL interviewed also expressed concern over the level of care that D.M. receives while he is in Mother's care. Specifically, witnesses mentioned concerns regarding whether Mother is capable of making sure "the child eats properly, wears clothes and shoes that fit, or teach him things." Appellee's App. Vol. II, p. 25. "[Mother] doesn't usually follow through with things." Appellee's App. Vol. II, p. 26. Another witness also voiced concerns that "[Mother] will not cooperate with [Father] to get the child the medical treatment that he needs." Appellee's App. Vol. II, p. 27. Based upon the witnesses' comments and observations, the GAL concluded that Father is the most stable and reliable parent who will make sure all of D.M.'s needs are met. The trial court made its determination regarding custody after two evidentiary hearings and reading the GAL's report. Based upon the extensive information reviewed by the court, sufficient findings were made to

support the trial court's decision to award Father sole legal and physical custody of D.M., subject to Mother's right to parenting time.

## III.   Whether this Court has Jurisdiction to Address Child Support

[10]   Mother argues that the trial court should have set two effective dates for the child support obligation.  Father, however, argues that this court does not have jurisdiction to address this issue as there is not a final order nor is there an order that falls within the categories of valid interlocutory appeals.  The trial court's order appears to anticipate additional action by both Mother and Father prior to the trial court's entering an order addressing child support and the effective dates for the child support.

> The Indiana Court of Appeals has jurisdiction in all appeals from final judgements.  A final judgment is one which disposes of all claims as to all parties . . . . A final judgment disposes of all issues to all parties, thereby ending the particular case and leaving nothing for future determination.  Whether an order is a final judgment governs our subject matter jurisdiction, and it can be raised at any time by any party or by the court itself.

*Bacon v. Bacon*, 877 N.E.2d 801, 804 (Ind. Ct. App. 2007) (internal citations omitted).  As stated above, the order at issue does not dispose of any claims regarding child support, therefore, we cannot address the issue regarding child support unless it is an appealable interlocutory order.

> An interlocutory order is one made before a final hearing on the merits and requires something to be done or observed but does not determine the entire controversy.  The Indiana Court of

> Appeals has jurisdiction over appeals of interlocutory orders under Rule 14. An interlocutory order may be appealed if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal.

*Id.* (internal citations and quotations omitted). No such certification and acceptance occurred in the present case. However, certain interlocutory orders may be appealed as a matter of right under Indiana Appellate Rule 14. "Appeals from interlocutory orders must be expressly authorized, and that authorization must be strictly construed." *Id.* The order with respect to child support does not fall within any category of an interlocutory appeal as of right. Due to the fact that there is not a final order with respect to child support, Mother did not seek certification to file a discretionary interlocutory appeal, nor does the order with respect to child support qualify for an interlocutory appeal as of right, we do not have jurisdiction to rule on any issue regarding child support.

## IV. Whether Father Should Be Awarded His Appellate Attorney's Fees

[11] Father argues that the case should be remanded to the trial court for consideration of an award of appellate attorney's fees. "The Court may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Ind. Appellate Rule 66(E). However, our discretion is limited to "instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Boczar v. Meridian St. Found.*, 749 N.E.2d 87, 95 (Ind. Ct. App. 2001)

(internal citation and quotations omitted). "In general, we are cautious to award attorney fees because of the potentially chilling effect the award may have upon the exercise of the right to appeal." *Holland v. Steele*, 961 N.E.2d 516, 528 (Ind. Ct. App. 2012). Although we have not ruled in favor of Mother, we decline to remand the case back to the trial court for purposes of considering an award of appellate attorneys' fees because there is no evidence of frivolity, bad faith, or any other instance that would give rise to such an award.

[12] We affirm the trial court's order regarding the custody modification and decline to remand the case for a determination regarding Father's appellate attorney's fees.

Vaidik, C.J., concurs.

Brown, J., concurs in result with opinon.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lisa Bauschke, | Court of Appeals Case No. |
| *Appellant-Respondent*, | 20A04-1606-JP-1225 |
| v. | |
| Eric Miller, | |
| *Appellee-Petitioner*. | |

**Brown, Judge, concurring in the result.**

[13] I concur with the majority's conclusion to affirm the trial court's order regarding custody modification and to decline to remand the case for a determination regarding Father's appellate attorney fees. I write separately regarding the majority's conclusion that we do not have jurisdiction to rule on the child support issue raised by Mother. Slip op. at 11. In its order, the trial court ordered the parties to exchange information necessary to recalculate child support, submit a child support obligation worksheet to the court within fifteen

days if possible, and it set the date "that the modification of child support [would] take effect" as May 20, 2016. Appellee's Appendix Vol. II at 21. On appeal, Mother argues that she "filed a motion for modification of child support on January 21, 2015 and the court never issued an even temporary order as the parties attempted to work through the issues" and that the "court should have set two effective dates for child support to be calculated, January 21, 2015 thru May 20, 2016 and May 20, 2016 going forward." Appellee's Brief at 27.

[14] The Indiana Supreme Court recently explained in *In re Matter of D.J. v. Dep't of Child Servs.*, No. 02S03-1610-JC-548 (Ind. Feb. 7, 2016), that even where a court's order does not amount to a final judgment or qualify as an interlocutory order under Ind. Appellate Rule 14, "timeliness is not a prerequisite to invoking appellate jurisdiction." Slip. op. at 5. The Court restated the observation as follows: "the reviewing court is not deprived of jurisdiction if the notice is untimely—meaning belated or premature. The only two prerequisites under our appellate rules are (i) the trial court must have entered an appealable order, and (ii) the trial clerk must have entered the notice of completion of clerk's record on the CCS." *Id.* at 5-6. In this case, the court stated in its order that modification would take effect as of May 20, 2016. The parties do not dispute that the trial clerk entered the notice of completion of clerk's record on the CCS. Under these circumstances, I do not believe that a jurisdictional issue exists.

[15] Generally, "[a] trial court has discretion to make a modification of child support relate back to the date the petition to modify is filed, or any date

thereafter." *Becker v. Becker*, 902 N.E.2d 818, 820 (Ind. 2009). Mother challenges the court's decision to set the modification's effective date for May 20, 2016 rather than January 21, 2015, the date she filed her Verified Petition for Custody, Child Support Modification and to Establish Parenting Time. A court's ruling regarding modification of child support is reviewable for an abuse of discretion. *In re Guardianship of R.M.M.*, 901 N.E.2d 586, 588 (Ind. Ct. App. 2009). However, Mother fails to cite to the record or develop a cogent argument regarding this issue. The portion of her argument discussing this issue consists of three sentences, none of which are supported by citations to the record or authority, and she has not included her verified petition among the filed documents for review. Mother has thus waived her argument. *See Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (holding argument waived for failure to cite authority or provide cogent argument), *reh'g denied*, *trans. denied*.